RECEIVED-CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

2009 MAR 18 P 3: 59

ELLE & ES INVESTMENTS, INC

       Plaintiff,

       vs.

| | | |
|---|---|---|
| CITY OF EAST ORANGE; | § | |
| MAYOR ROBERT BOWSER; | § | |
| EAST ORANGE TAX COLLECTOR, | § | |
| ANN MARIE CORBITT; | § | |
| EAST ORANGE TAX ASSESSOR | § | |
| VICTOR HARTSFIELD; | § | |
| EAST ORANGE DEPARTMENT OF | § | |
| PROPERTY MAINTENANCE, LARRY | § | |
| JOHNSON; EAST ORANGE DEPARTMENT | § | Civil Action No. |
| OF PROPERTY MAINTENANCE, | § | |
| MARK BARNER; EAST ORANGE | § | |
| ZONING OFFICIAL LOYD RAHEEM; | § | |
| EAST ORANGE WATER COMMISIONERS; | § | **COMPLAINT** |
| EAST ORANGE PARKING AUTHORITY; | § | |
| EAST ORANGE MUNICIPAL COURT, | § | |
| JUDGE DAN SOLOMON SMITH; | § | |
| EAST ORANGE MUNICIPAL COURT, | § | |
| JUDGE KARIMU HILL-HARVEY; | § | |
| EAST ORANGE MUNICIPAL COURT, | § | |
| PROSECUTOR KENNETH HALL; | § | |
| NARISIMHA POLKAMPALLY, individually | § | |
| and d/b/a WORLDWIDE VENTURE | § | |
| PARTNERS, LLC, and THE #1 REAL | § | |
| ESTATE COMPANY, LLC; DONALD | § | |
| R. SANDERS, JR, individually | § | |
| and d/b/a WORLDWIDE VENTURE | § | |
| PARTNERS, LLC, and THE #1 REAL | § | |
| ESTATE COMPANY, LLC; | § | |
| BREEN CAPITAL AND ITS SUCCESORS; | § | |
| CALIFORNIA LOW INCOME HOUSING | § | |
| SOLUTIONS; RALPH P. ALLOCCA, ESQ.; | § | |
| CAPITAL ASSET RESEARCH CORPORATION | § | |
| c/o THE CLAYTON COMPANIES; TREZZA | § | |
| SCRAP METAL; | § | |
|      Defendants | § | |

## TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

     Plaintiff Elle & Es Investments, Inc with a mailing address at P.O. Box 7232, North Brunswick, NJ 08902, files this Original Complaint against Defendants City Of East Orange;

3

Mayor Robert Bowser, 44 City Hall Plaza, East Orange, NJ; East Orange Tax Collector, Ann Marie Corbitt, Employed At 44 City Hall Plaza, East Orange, NJ; East Orange Tax Assessor, Victor Hartsfield, Employed At 44 City Hall Plaza, East Orange, NJ; East Orange Department Of Property Maintenance, Larry Johnson, Employed At 44 City Hall Plaza, East Orange, NJ; East Orange Department Of Property Maintenance, Mark Barner, Employed At 44 City Hall Plaza, East Orange, NJ; East Orange Zoning Official Loyd Raheem, Employed At 44 City Hall Plaza, East Orange, NJ; East Orange Water Commissioners 99 Grove Street, East Orange, NJ; East Orange Parking Authority; East Orange Municipal Court, Judge Dan Solomon Smith; East Orange Municipal Court, Judge Karimu Hill-Harvey, Employed At 221 Freeway Drive East, East Orange, NJ; East Orange Municipal Court, Prosecutor Kenneth Hall, Employed At 221 Freeway Drive East, East Orange, NJ; Narisimha Polkampally Who Resides At 24 Walnut Parkway, Montclair, NJ; Donald R. Sanders, Jr.; Worldwide Venture Partners, LLC, And The #1 Real Estate Company, LLC With A Principal Address At 25 Pompton Ave, Suite 206, Verona, NJ 07044; Breen Capital And Its Successors; California Low Income Housing Solutions; Ralph P. Allocca, Esq., Who Transacts Business At 14 Main Street, Suite 304, Madison, NJ; Capital Asset Research Corporation C/O The Clayton Companies, its principal place of business is at 2 Corporate Drive, Suite 350, Shelton, CT 06484; ; TREZZA SCRAP METAL, 126 Hickory St., Orange, NJ 07050 and for causes of action would respectfully show the court as follows:

## JURISDICTION AND VENUE

---

**Section 1331. Federal question**
**Section 1343. Civil rights and elective franchise**

---

## CAUSE OF ACTION
## STATEMENT OF FACTS

At all times material to this Complaint, acting alone or in concert with others, Defendants named in this Complaint have formulated, directed, controlled or participated in the acts or practices set forth in this Complaint.

Whenever it is alleged in this partition that Defendants did any act, it is meant that the Defendants performed or participated in the act or that Defendants' officers, agents or employees performed or participated in the act on behalf of and under the authority of the Defendants.

On June 15, 2000 we purchased 141 S. Harrison Street, East Orange an unoccupied 12 story building formerly the Hotel Suburban and current office building plus an adjoining parking

lot in the rear. We assumed the tax liens on the property. At the time of purchase appraisals on the building was more than $2 million dollars, it was estimated that it is worth more than $3.5 million dollars. There was a larger parking lot that use to belong to the building but because East Orange taxes parking lots differently and separately, it was foreclosed on by a company called Breen Capital for back taxes, the lot is known as 147 S. Harrison Street, this foreclosure separated the main parking lot from the building. Breen made an agreement with us so that we could buy the parking lot for a nominal price.

There was a tremendous amount of rubbish and debris on the property at the time of purchase it came from illegal dumping by numerous people. The debris consisted of roofing materials, concrete, asphalt, home and office furniture, files, tires, appliances, demolished garages, houses and other materials. The building had some damage from vandals and was completely open on all sides. The aluminum facade, interior wires and fixtures was removed daily by vandals and sold to the local scrap yard called Trezza's Scrap Yard a few blocks away in Orange. The City of East Orange took no action to deter or assist in the prevention of vandals from destroying the property or to stop the illegal dumping on the lot. Police in Orange and East Orange were called several times regarding the stripping of the building and the selling of the stolen materials to Trezza's Scrap Yard. The owner of Trezza's Scrap Yard was informed that he was buying and accepting stolen goods, he claimed that it was not his problem and that 141 South Harrison Street was vacant anyway. Pictures were taken of some of individuals responsible for vandalizing the property while they were vandalizing it and bringing the materials to Trezza's. Estimates of the damage caused by people scraping the building is more than $1,000,000.00.There were no standpipes in the building when we bought it because they

5

had been removed by vandals, this caused the building to be shut down by the fire department almost 2 years before we purchased it. There were squatters living in the building at the time of purchase.

Upon closing we immediately began cleaning up the property and boarding up the building. Debris was still being brought onto the property and dumped daily. A week after we closed on the property a city inspector named Mr. Gaulman came to the building asking numerous questions, he was obviously upset about our purchase of the property and started shouting questions like "When did you buy this property", "Who sold you this property", "Why did you buy this property", "How much did you pay for this property", etc." Mr. Gaulman then ordered us to stop all work. He then said that his boss Mr. Larry Johnson would be contacting us and would be very curious as to how we were able to buy the property without his knowledge.

We caught many the illegal dumpers but when we called the police they claimed that they could not charge the suspects with dumping since the city had no laws against the act. We learned that two of the people dumping were relatives to some city officials, and one of them said Inspector Gaulman was his uncle and that he told him it was alright to bring stuff and dump it on the property. Another person whom I was able to get a picture of standing in front of his truck and license plates on the property dumping told me that a friend whom worked for the City said it was fine to dump on the property. In addition, we caught an individual whom was seen several times on the property with a pick-up and dump truck dumping rubbish. We filed numerous complaints against this individual but the City then filed the same complaints against us. Another person lived in a house behind the building and kept bringing large debris including refrigerators, stoves and cabinets onto the property, after I caught him he told me that he was a

6

cousin to an attorney for the City named Mr. Holt and that I need to stop harassing people about dumping because everyone does it and I alone might get hurt trying to stop it.

I received a phone call from Mr. Larry Johnson whom identified himself as an attorney and the Director of Property Maintenance. He grilled me and had numerous questions regarding the purchase of the property similar to the ones asked by Mr. Gaulman, he demanded answers and swore at me. He asked me why I bought the property, Who sold us the building? Where did I get the money to buy the building and so on. He claimed we made a big mistake because we purchased the property and he wanted me to come to his office. While I was at his office he asked me whom I was working for and I told him the name of our company Elle & Es Investments, Inc, but he said he did not believe me once I told him I was an officer in the company. I informed him that we had caught one of the suspects who were responsible for much of the dumping on the property and that we filed criminal charges and he said he did not care about that. He promised that I would have a real problem with him because we bought that building.

On July 19, 2000, we started receiving summonses by mail. The summonses were signed and dated July 18, 2000 and claimed the violation was on June 16, 2000 this was a day after we closed on the property and it was addressed to Larry Simmons. I went to court on the summonses before Judge Dan Smith. Judge Smith had numerous questions regarding our purchase of the property. The judge made some sarcastic remarks about me living in South Orange and having an education I told the judge my civil rights were being violated and he smirked and laughed at me. I became very uncomfortable with the situation and the motive for being before him on the

7

charges because of his questioning. He asked other things not relating to the summonses. I began to suspect that there was a conspiracy against me for buying the property. Summonses kept coming in the mail. I pointed out confusing issues with the summonses to Judge Smith and it seemed to infuriate him. He seemed to be biased towards me. I questioned the inspector Mark Barner who wrote the summonses and his motives for writing them and he just laughed and stated that I did not know whom I was dealing with. In the meantime the person I filed dumping charges against plead guilty to some of the charges and the Judge dismissed the rest and ordered him to assist in cleaning up what he had dumped, he ignored the order and Judge Smith did nothing about it and claimed I was responsible for everything.

Mr. Johnson was present in court and told me that he very close with Judge Smith and that the Judge would do anything he asked. He also said that I should not be making any money on the property. At one point in September of 2000 four warrants were issued at the same time for my arrest and for no valid reason, I had not missed any court dates. At the same time Mr. Johnson told the Judge to enter an order to shut the parking lot down that I was renting to the residents in the immediate area. There were no violations, complaints or summonses issued regarding the parking lot. Judge Smith ordered me to close the parking lot and tow any cars on the lot that did not leave. He threatened to throw me in jail if I did not comply with his order. In October 2000 I put the City of East Orange on Notice with a Notice Of Claim for harassment.

I received numerous anonymous phone calls from callers who seemed to know I was encountering problems with various officials in City Hall, they said that I should seriously consider selling the building or title for a few thousand dollars and they suggested that if I

continued to fight City Hall I would have more problems. In December 2000, Judge Dan Smith left the bench in East Orange. The next time I came to court Judge Karimu Hill Harvey was presiding over the case. She openly told the Director of Property Maintenance Larry Johnson that they should be careful how they act while in front of me because I might think that something was going on between them. Around this time I received a phone call from a company called Commonwealth Demolition, regarding their interest in the purchase of the property. They insisted on meeting with me. I was met by two individuals one of them was named Balozi Harvey and his business associate Bob. I later learned that Mr. Harvey was the husband of Judge Karimu Hill-Harvey.

I went to an attorney named Mr. McDonald of the firm McDonald & Campbell of East Orange to assist me in the problems I was encountering in East Orange, he was recommended by Mr. Sherwin Campbell an East Orange Public Defender. Mr. McDonald told me that City officials said that I was a major drug dealer then he asked whom I was working for. I did not continue to seek his help.

Someone named Al Hill kept coming on the property, he told me stories of how the former Judge Dan Smith tried to buy the building and how they intimidated the last owner in efforts to get him to abandon the property so they could get it. He then told me that former owners owed him at least $100,000 for work he did in the building, he also told me that he use to work for the City of East Orange as a clerk and that his sister was Judge Karimu Hill Harvey. I recalled that there was a lis pendens on the property by Albert Hill III.

9

The New Jersey Redevelopment Authority or NJRA came into City Hall to meet with city officials on my plans with the property. They were going to give me financing on the property. We met with Mr. Loyd Raheem and during the meeting I was informed by Mr. Raheem that I needed to agree to drop the idea of suing the City for what they had done to me if I wanted to move forward with my plans. The Mayor refused to meet with me. No other officials attended the meeting. NJRA did not appreciate how the City was responding and advised me that if the City could not show that they were supportive of my efforts and project then their agency could not be of much assistance. This agency was prepared to cover all outstanding property taxes that came with the property when we purchased it so that I could move forward.

In the early months of 2001 I received a document called "Four Years Of Progress" with a note attached that I should attend a public forum Mayor Bowser was having at the East Orange Public Library. In this document was the address of my property as one of the addresses that was in the works for redevelopment by other developers represented by the City of East Orange. I asked several questions about the Cities intentions with the property and the Mayor answered publicly about what they were planning. I asked him if he knew which building was 141 South Harrison Street and he said he did and that he went pass that building everyday. I then identified myself as an officer in the corporation that owns the property. I also asked the Mayor how they could claim to have rights and plans for my building. I was immediately told that the address of the property listed in the document was a misprint and I was asked to sit down and told that a meeting would be set up to discuss my plans with the property. But I questioned the claim that there was a misprint since the Mayor fully understood and described the property as a big white elephant prior to me identifying myself. After the forum I was approached by one of the Mayors

10

aids. He was enraged and yelling at me about my purchase of the property and stated that they did not believe that my title was valid. He told me that I should never have embarrassed the mayor and that I would have real problems for doing so.

I talked with Mr. Joe Jenkins, the City Administrator. He said he would set up a meeting for me discuss plans for what I was trying to do with the building. I received a letter from the City in mid May 2001 asking that I come in and discuss delinquent taxes, property maintenance violations and the property deeds. It was addressed to five City officials. But only two City officials were at the meeting and they questioned me about how I bought the property, how much I paid, to whom, why I bought the property and so on.

My case on the numerous summonses issued to me eventually went to trial in June of 2001. I sent 10 subpoenas to city officials and others including the Mayor. Judge Karimu Hill Harvey rejected every subpoena I sent and said that none of these people would be bound by my subpoena. I explained what each one had something important to contribute to the case but she refused to allow it. She also denied my motion to have a change of venue and for her to recuse herself based on the fact that her brother had a financial interest in the property and that her husband Balozi Harvey and his business associate from Commonwealth Demolition had approached me with interest in the property. I also explained that there were other conflicts of interest like Larry Johnson having a law office next to former Judge Dan Smith's law office at the time they were prosecuting my case and the fact that I filed a Notice of Claim against the City of East Orange and I believed I would not be given a fair trial. I also provided a letter that was sent to me by mail on City letterhead from someone who worked for the City and felt

11

compelled to inform me that they saw City Inspector Mark Barner use his vehicle to push down one of the fences I erected on the property as ordered by the courts to do. Mark Barner was the inspector that Larry Johnson had write me summonses even though Mr. Barner was not assigned to that area to write summonses. Judge Karimu Hill-Harvey denied everything I requested and denied my request to hire another attorney of my choice to represent me. The charges were not brought against the corporation but against me personally. I had gone to court more than 40 times in a year's time on these summonses.

I was able to ask a few questions of Mr. Larry Johnson at the trial because he wanted to sit in on the trial. He did not like it when I asked the question if anyone had offered him money or any other type of compensation for being successful in intimidating me into abandoning the property and leaving the City. I asked him numerous questions about his harassment attempts and other occurrences just so it would be on record. A Police Officer for the City of East Orange came to testify as a witness on my behalf and was shunned at the door by the Municipal Prosecutor Kenneth Hall whom advised the officer not to get involved in this particular case and that there was nothing the officer can do or say to help me. Judge Karimu Hill Harvey had already determined that I was guilty and she found me guilty of each and every charge. I was fined $500.00 for each guilty verdict, totaling over $6,000. Earlier the Judge had already hit me with a daily contempt charge, which I paid. The Judge denied my request to stay the penalties pending the outcome of the appeal with the exception that if I post a $10,000 cash bond she would grant a stay.

After the trial Mr. Larry Johnson walked behind me and grabbed me and swore at me and then told me that he did not like what I said. He shouted aloud "You are a pain in the ass."

I paid for and ordered transcripts and appealed the case. I also asked the appellate court to grant me a stay of the fines pending the outcome of the appeal. I kept contacting the municipal court regarding where the transcripts were for the appeal. I spoke with a Ms. Ella Henderson regarding the transcripts on several occasions and she kept telling me that the court was backed up and that the transcripts would have to wait until they could find someone to work on them. Over a year went by after I paid for transcripts and East Orange Municipal Court refused to provide transcripts of the proceedings.

A perspective buyer whom had complete plans on my building and direct connections with the Mayor said he had been planning to get my building and he called the mayor in front of me to let him know that I was in his office in regards to my building. No contract ever materialized.

In another occurrence of harassment, the city tried to prevent me from having a carnival in the summer of 2002. The carnival owners said they kept receiving phone calls from someone in the city telling them that the carnival could not be held at that property. The owners of the carnival identified one of the calls as coming from the mayor's office in which the caller stated that the carnival had been cancelled and for them to begin removing their carnival equipment from the property immediately. The carnival was inspected by the fire department at least 4 times prior to the opening of the event and each time the fire department claimed they had no idea why

13

they were being sent to inspect and the East Orange Police showed up numerous times for false alarms in front of the entrance to the carnival.

I received a call from the company I used for towing unauthorized vehicles from the property and they told me that a notice from East Orange Municipal Court came to their office in Newark but it had my name on it. It stated that I needed to come to court because I signed a complaint against an individual for parking illegally. On October 8, 2002 I went to court for the notice, the Judge was Karimu Hill Harvey and she dismissed the complaint I signed and then proceeded to ask me if I knew there were warrants for my arrest. I asked how she could know this since I know there was no file on me before her. She said that she would have her staff get the file but that she was sure there were warrants for my arrest. She ordered me to sit on the prisoner's bench.

The staff returned with the file on me. The Judge told me that warrants were issued for my arrest because I owed fines from the trial on the building and did not come to court on the notices sent for it, I informed her that I had appealed the case and the fines were stayed pending the outcome of the appeal. She said there was an order dated several weeks earlier dismissing my appeal for failure to order and pay for transcripts. I informed her that I had never received any notices to come to court on the matter and that I had not ever missed a court date for anything in the past and that I ordered and paid for transcripts and could provide an original receipt to prove it. She then said that if I could come to court on a complaint I made against someone then I should have been able to get the other notices to come to court on my matters. She said that since the order was entered dismissing the appeal that the fines became due immediately I told her that

14

I had moved at least a year and a half prior and no notices were forwarded to my Post Office Box and that the notice to come to court on this matter I was there for was sent to the towing company's address in my name. She said that it did not matter right then because the fines were due and there was a $7,000.00 cash bail on me. She told the officer to arrest me until bail was posted. After about 30 minutes, I was brought back before Judge Karimu Hill Harvey. She then said she forgot to hit me with contempt and ordered me to the Caldwell Jail Facility for 60 days.

While I was in jail my family informed me that numerous notices started coming to the Post Office Box from East Orange Municipal Court. Some were about fines being due and warrants being issued, bail being set and court dates to come to court. One of the warrants was issued and noticed just two days before I was last in Court it was dated with a Saturday date. All the notices came at one time.

A buyer emerged named Worldwide Venture Partners, LLC aka The #1 Real Estate Company, LLC that tried to convince my realtor to conduct a deal on my behalf while I was in jail and secure a signature from me to put the property under contract under their terms.

In January 2003, a month after my release I sent a letter with a copy of the receipt for the transcript to the appeals court to find out what had occurred. I did not hear from the court so I sent another letter two months later and still got no response. I became suspicious once I was told by a retired Police Officer, that the City had people in the county to help them with their dirty work and that Judge Hill-Harvey's husband also worked for and had an office in the Essex County Hall of Records . The former cop called it extended corruption.

15

In January 2003 a young man approached me looking for work. He drove a large front end loader onto the parking lot next to my building during a major snow storm and said he could do snow plowing for me and anything else I needed. I used his services until I found out that he was bringing his equipment from Commonwealth Demolition in Orange and that his father was Balosi Harvey, this also meant that Judge Karimu Hill–Harvey was his mother or step-mother.

On January 30, 2003 I reluctantly entered into a contract with Worldwide Venture Partners, LLC to sell them the property. I also agreed to give them the right to assume the agreement I had with the parking lot owner to buy the lot for $75,000. Worldwide claimed that they were in a position to negotiate with the East Orange tax office and the Mayor to have outstanding taxes significantly reduced. I advised them that I believed that the City's motivation for filing foreclosure on the parking lot was to prevent me from completing the agreement with its owner to purchase it so that I would not be able to get investors and redevelop or sell the property so easily without its main parking lot. They said that the City was unwilling to work with me but were ready and willing to work with them and that it would be in my best interest to sell them the property. They stalled the contract numerous times and refused to acknowledge Time of the Essence demands. They said that they did not want me to secure the parking lot by paying the $75,000 because they had made arrangements to buy the lot directly. They were advised that the parking lot was in foreclosure by the City for the last year and a half in back taxes and they waited until the City obtained final judgment of foreclosure on the parking lot so they could manufacture a lawsuit against my corporation for Specific Performance to sell them the parcels that we owned and to get a credit for the value and liens on the parking lot we did not own as to produce a deficit in their favor. They claimed that I attempted to sell them a parking lot

that I did not own as part of the entire sale of the property and they wanted the purchase price to

reflect the loss of the parking lot so that they could get the property for nothing. They omitted

crucial and specific information about the agreement between Tax Serve/Breen Capital (owners

of the parking lot) and our company to purchase the parking lot for $75,000 and that we were

transferring the right to assume that agreement to purchase to Worldwide. They also did not

mention that they stalled the contract for lengthy periods of time and refused to close on demand

of Time of the Essence numerous times and that their deposit was returned to them and the

contract between them and us was canceled by us. Their current attorney, Mr. Ralph Allocca,

was made aware that Worldwide's case was being presented for an improper purpose, and that

they were further attempting to harass and to cause unnecessary delay and the needless increase

in the cost of litigation. We were contending that Worldwide Venture Partners, LLC is an agent

for the City of East Orange and the rulings in New Jersey Superior Court in favor of Worldwide

was procured by fraud. It was also contended that Worldwide Venture Partners, LLC and its

members, Donald R. Sanders, Jr. and Narisimha Polkampally did not at any time during the start

of or throughout the contract have the necessary funds to initiate an fulfill their financial

obligations. In the initial stages of the contract they gave the environmental company my name

and phone number as the contact person for payment of several thousand dollars for a report that

Worldwide ordered and they refused to pay the more than $9,000 for a report from a second

environmental company once the first one refused to release the report without payment. The

Certification of Donald R. Sanders Jr., an officer in Worldwide Venture, did not coincide with

the pleadings and others documents submitted by his attorney. Their attorney Ralph Allocca had

full knowledge of the fraudulent scheme that Worldwide was perjuring through him in the Courts

and he allowed and assisted them in their endeavor. They clearly have ignored the law to inflict substantial injury to me.

I received a notice from the Appeals Court regarding the East Orange letter I sent them 10 months prior in January 2003. They were affirming the dismissal of the appeal. What was disturbing to me is that I sent the letter to the judge who signed the first order of dismissal but it was answered by a different Judge and the fact that it was answered soon after I sent a complaint into the New Jersey Attorney General's Office.

I was arrested again on the same East Orange property maintenance warrants. I was brought before Judge Karimu Hill Harvey once again. She asked me why I had not shown up in court as noticed. I informed her that I had not received any notices she told me the dates and I informed her that I was in jail from her contempt of court order in 2002 on those dates. She denied ever sending me to jail for 60 days. She told me not say anything else because she did not want me to fabricate another story. She then asked her assistant to go and find out if I was in jail. Her assistant came back and told her I was in jail for only one day. She then set bail and gave me an 8-day-rule for trial, she never told me what the charges were or why I was going to trial in 8 days.

I was released prior to the trial date but due to violations of my rights and fear of returning back to jail for no valid or just reason and because of the corruption in East Orange I did not return. I believe the City engaged in illegal activities to take my property through force and without compensation at any cost. They put my life in danger by throwing me in jail and

18

deliberately issued bogus summonses and had shell companies approach me when the City

thought they had beaten me enough to surrender the property all to tie me up legally so they

could complete a foreclosure and stop my business dealings in East Orange. I believe that certain

officials had an agenda to make a profit personally off the sale of the property if they could get

rid of me. I spent tens of thousands of dollars in cleanup of more than 70 tons of debris that kept

coming in a suspicious way.  There were incidents where someone kept dumping mounds of wet

debris that included leaves, cigarette packs and butts, cups from various local fast food

restaurants and other stuff in the early morning hours, I staked out the property and saw a street

sweeper machine hired by the City of East Orange to clean the streets offloading its trash on my

property. Throughout the years and on a regular almost daily basis I would have the property

cleaned thoroughly and try to keep it secure and safe but people kept causing problems dumping

large objects including tree stumps, logs, dirt and other debris on the property. Someone kept

bringing gasoline cans filled with gas and breaking into the building and placing these cans in the

immediate entrances either for me to find or for someone to do a specific job if it was not found.

At the same time, as soon as some of these things happened the city inspector, Mark Barner

happened to be near or at the property to try and site me for the occurrence as if he were tipped

prior to it happening. On two occasions I came to the property to find that all the chains, concrete

set posts and fences I had installed to keep vehicle from entering beyond certain points had been

pulled out of the ground by someone with a piece of equipment or a heavy vehicle and dragged

to the middle of the parking lot.

          The City also was successful in thwarting my efforts to obtain outside private and public

investors in the projects I had slated for the property by falsely announcing in the Newark Star

19

Ledger that the property was in foreclosure and soon to be auctioned of by the city, this was printed several times and no such action had been initiated against the property. I recently learned that the writer for the newspaper, Kevin Dilworth, was close friends with the mayor and his aids.

In addition, the case between Worldwide Venture Partners, LLC and my corporation Elle & Es Investments, Inc has been currently won by the Plaintiffs through Judge Levy, the same judge that is over the foreclosure on the property by the City of East Orange. While in Court on the matter in Essex County Chancery I heard an attorney from one of the 3rd party lien holders ask one of the principles of Worldwide Venture Partners, Donald R. Sanders, Jr. the status of the foreclosure on the building and he answered that the City was holding off on final judgment to see if Worldwide could win in court against us and take the building.

I recently went to the property and was met by a resident who knew me and she said the City was looking for me and began calling someone on her cell phone to alert them that I was on my property then she called the police. She said she was going to receive a nice reward for the call.

East Orange has caused me severe financial hardship and deprived me of my freedom and have intimidated me, harassed me, prevented me from doing business and making an income through coercion and by oppression thereby violating my civil rights. They stopped my plans to raise more than $10 million dollars to bring the taxes current so that I could apply for a tax reduction and redevelop the property.

20

**JURY BY DEMAND**

Plaintiff hereby demands a trial by jury on all issues triable.

21

## CERTIFICATION

I hereby certify that the matter in controversy is not subject of any other action in this Court or Arbitration proceeding and no action or Arbitration proceeding contemplated. I hereby certify that to the best of the undersigned's knowledge there are no other parties, which are to be joined in this action.

March 18, 2009                                    Elle & Es Investments, Inc

                                                  By_____
                                                     Lawrence Simmons

## DEMAND

It is demanded that damages including cleanup at the property, loss of income from past, present and future that would have been realized regarding the property and legal fees be awarded to the Plaintiff.

It is demanded that East Orange pay the sum of $100,000,000 (One Hundred Million Dollars) And for punitive and compensatory damages.

RECEIVED-CLERK
U.S. DISTRICT COURT
2009 MAR 18  P 4 00